Dennis L. Jacobson, Plaintiff-Respondent,

v.

American Tool Companies, Inc., a foreign corporation,
Defendant-Appellant.

Court of Appeals

*No. 97–2219. Submitted on briefs July 27, 1998.—Decided
October 14, 1998.*

(Also reported in 588 N.W.2d 67.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *W. Stuart Parsons* and *Michael J. Fischer* of *Quarles & Brady* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert I. DuMez* of *O'Connor & Williams, S.C.* of Kenosha.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J.   American Tool Companies, Inc. (American) appeals from a judgment finding it breached an employment contract with Dennis L. Jacobson for refusing to pay Jacobson his stock appreciation rights after his employment with American terminated. American argues that the evidence is not sufficient for the circuit court's determination that Jacobson resigned and that he had an at-will employment relationship with the company. It insists that Jacobson forfeited his claim to his stock appreciation rights by breaching his fiduciary duty as an officer of the corporation. American also appeals the award of attorney's fees per § 109.03(6), STATS., arguing that the language "a reasonable sum for expenses" should not include actual attorney's fees. We disagree and, accordingly, affirm the circuit court.

Jacobson served as president of American from February 1993 until his resignation on August 31, 1995. Jacobson commenced an action against American for breach of contract after it refused to redeem stock appreciation rights Jacobson contends vested while he was with the company. He subsequently amended his complaint to include a violation of Wisconsin's wage payments, claims and collections statute, § 109.03(5), STATS.

After a five-day bench trial, the circuit court concluded that Jacobson and American had an at-will employment relationship and because of this at-will employment status, neither owed a fiduciary duty to the other. The court reasoned that Jacobson's resignation was first in time to his discharge by the board of directors and his letter of resignation terminated his employment with American. Concerning the stock appreciation rights, the circuit court concluded that Jacobson held the rights at the time of his resignation and the rights were not canceled before his involuntary resignation. Finally, the court concluded that the stock appreciation rights fell within the definition of "wages" in § 109.01(3), STATS.,[1] but refused to hold that American's failure to redeem those rights constituted a violation of ch. 109, STATS.

Jacobson sought reconsideration of the circuit court's denial of his request for attorney's fees under

---

[1] Section 109.01(3), STATS., provides:

"Wage" or "wages" mean remuneration payable to an employe for personal services, including salaries, commissions, holiday and vacation pay, overtime pay, severance pay or dismissal pay, supplemental unemployment benefit plan payments when required under a binding collective bargaining agreement, bonuses and any other similar advantages agreed upon between the employer and the employe or provided by the employer to the employes as an established policy.

ch. 109, STATS., contending that the court and the parties agreed his demand under ch. 109 should await the outcome of his principal claims. The court concluded that although an award of attorney's fees is not specifically allowed in § 109.03(6), STATS., the intent of ch. 109 was to make litigants whole and an award of attorney's fees would fulfill that intent. The court entered judgment against American for the value of the stock appreciation rights, interest, double statutory costs and disbursements plus attorney's fees for a total judgment of $3,519,202.84.

American appeals from this judgment. It contends that the circuit court erred in concluding that Jacobson, as an officer and director, did not owe a fiduciary duty to American and, if he did, he did not violate that duty when he refused to voluntarily surrender his stock appreciation rights prior to his resignation. American also asserts that the court erred in concluding that Jacobson's resignation saved his stock appreciation rights. Finally, American argues that Jacobson is not entitled to attorney's fees under ch. 109, STATS.

## SUFFICIENCY OF THE EVIDENCE

We approach this appeal as a challenge to the sufficiency of the evidence to support the circuit court's factual findings. When considering the sufficiency of the evidence, we apply a highly deferential standard of review. Furthermore, the fact finder's determination and judgment will not be disturbed if more than one inference can be drawn from the evidence. *See Johnson v. Merta*, 95 Wis. 2d 141, 151, 289 N.W.2d 813, 818 (1980). The circuit court's findings of fact will not be set

389

aside unless we conclude that they are clearly erroneous. *See* § 805.17(2), STATS.

As part of our analysis, we will accept the circuit court's determination as to weight and credibility. *See State v. Echols*, 175 Wis. 2d 653, 671, 499 N.W.2d 631, 636 (1993). If a circuit court does not expressly make a finding about the credibility of a witness, we assume it made implicit findings on a witness' credibility when analyzing the evidence. *See id.* at 672–73, 499 N.W.2d at 636. Such deference to the circuit court's credibility determination is appropriate because it has the opportunity to observe the witness' demeanor and gauge the testimony's persuasiveness. *See Johnson*, 95 Wis. 2d at 151–52, 289 N.W.2d at 818. As a result, the circuit court's finding on the credibility of a witness "will not be questioned unless based upon caprice, an abuse of discretion, or an error of law." *Id.* at 152, 289 N.W.2d at 818.

American argues on appeal that the evidence does not support the circuit court's decision that Jacobson resigned before he was fired "for cause." American urges this court to overturn the circuit court's decision. However, we are not to weigh conflicting evidence to determine which should be believed. Rather, if there is credible evidence to sustain the findings, irrespective of whether there is evidence that might lead to the opposite conclusion, we must affirm. With these standards in mind, our review of the record finds ample evidence in support of the court's findings of fact.[2]

Jacobson signed a written employment contract with American on December 27, 1992. Part of the employment contract detailed Jacobson's compensa-

---

[2] Our decision is facilitated by the thorough and well-reasoned analysis of the trial judge.

tion package, including stock appreciation rights (SAR) in the company. The SARs are a "reward . . . for . . . contributions toward increasing the value of the [c]ompany." The contract does not specify the length of the employment, but states that "[a]ny departure from the Company at any time would require you to sell . . . your vested interest in the SAR program." A provision in the contract also delineated what happens to SARs in the event of a termination for cause: the SARs would be forfeited.

In February 1993, Jacobson began working as the company president. During the course of his employment, the board of directors approved a revised SAR plan. Jacobson and several other American employees—including the board of directors executive compensation committee and a private law firm—all contributed to the development of the new SAR plan. Before submitting the plan for the board's vote, the company's chief financial officer edited and approved the plan. The revised SAR plan created "1994B" SAR units. These special SARs are very lucrative because of their redemption price formula. For 1994B SARs, the difference between the economic value of the units at the time of issuance and the fair market value of the units at the time of redemption calculates the redemption price. Jacobson and other key employees lobbied to receive 1994B SAR units. After receiving Jacobson's request, Allen D. Petersen, American's chief executive officer, granted him 1994B SAR units.

After a company audit revealed the substantial value of Jacobson's 1994B SAR units, American began campaigning for Jacobson to agree to change his units' valuation method. Jacobson refused to cooperate, and his relations with others in the company began to deteriorate.

391

Petersen testified that on August 28, 1995, he informed Jacobson that he believed he had grounds to terminate him "for cause." Petersen called a special meeting of the board of directors for August 31 at 2:00 p.m., where he planned to recommend that the board terminate Jacobson's employment and cancel his SARs. Meanwhile, at 8:00 a.m. on August 30, Jacobson hand delivered his letter of resignation to Petersen. Later on August 31, the SAR committee canceled Jacobson's SAR units, and the board met and officially terminated Jacobson's employment for cause.

Our review of the record reveals substantial evidence to support the court's written findings of fact and conclusions of law. The circuit court held that the employment contract lacked a specific definition of "just cause" for termination and did not expressly deviate from the assumed at-will status. Similarly, there is more than sufficient evidence to support the court's reasoning that "Jacobson and American Tool had an at-will employment relationship." Furthermore, the court properly found that Jacobson could retain his SARs because he resigned from his employment before the board terminated him.

### JACOBSON'S FIDUCIARY DUTY

American contests the circuit court's finding that Jacobson did not owe the company a fiduciary duty.[3] It argues that the circuit court incorrectly held that Jacobson was an at-will employee and thus never

[3] Jacobson contends this issue has been waived because it was not brought before the circuit court. To the contrary, American did present this argument in its trial brief. Therefore, the issue is not waived. See Wirth v. Ehly, 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980).

addressed the issue of whether Jacobson owed the company a fiduciary duty as an officer and director.[4] This issue involves the application of law to the facts of the case. It therefore presents a question of law that we review de novo. *See Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

American argues that as an officer and director, Jacobson owed the corporation a fiduciary duty and bore the burden of establishing that he acted in good faith and his actions in seeking and retaining 1994B SAR units were inherently fair. American contends that as president, Jacobson stood on both sides of the transaction which culminated in his acquisition of 1994B SAR units. Specifically, it argues that on one side, Jacobson, as president, was the chief architect of the revised SAR plan and was privy to information regarding its exceptional value. On the other side, as an employee, he used the information he gained as president to dupe Petersen into agreeing that Jacobson could convert the old SAR units he held into 1994B SAR units. American also argues that once Jacobson was confronted about his acquisition of 1994B SAR units, he was under a fiduciary duty to voluntarily surrender those units when American asked him to do so.

---

[4] The circuit court held that an employment relationship does not necessarily involve a fiduciary duty. *See Hale v. Stoughton Hosp. Ass'n*, 126 Wis. 2d 267, 274, 376 N.W.2d 89, 93 (Ct. App. 1985). The circuit court held that "[s]ince an employer has no fiduciary duty to its employees, nor does an employee have such a duty to its employer." To the extent that there is no fiduciary duty in an employment relationship that implies a duty to terminate the relationship in "good faith," we agree with the circuit court.

Although the circuit court did not directly address this issue, it obliquely held that Jacobson had not breached his fiduciary duty as an officer and director of American:

> Although American Tool has attempted to portray Jacobson as a man who manipulated the company, who engaged in self-dealing and whose performance was contrary to the company's best interest, most of the American Tool executives and employees who testified . . . vouched for Jacobson's credibility. Some of them described Jacobson as a person of integrity, a person of highest moral character, a person he would work for again.

The circuit court found that at a board of directors meeting held nine days before Jacobson resigned, there was no mention of questionable performance or his retention of 1994B SAR units. The court recognized that Jacobson may have made poor management decisions that could have served as grounds for his termination, but his resignation preserved his rights under the SAR plan.

■ Failure by the trial court to make specific findings of fact is not necessarily reversible error. *See Hochgurtel v. San Felippo*, 78 Wis. 2d 70, 86, 253 N.W.2d 526, 532 (1977). In such situations we may adopt one of three courses: "(1) Affirm the judgment if clearly supported by the preponderance of the evidence, (2) reverse if not so supported, or (3) remand for the making of findings and conclusions." *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 749, 277 N.W.2d 787, 791 (1979). After reviewing the record, we conclude that the great weight and clear preponderance of the evidence support the conclusion that

Jacobson did not breach any fiduciary duty he had as an officer of American.

This issue highlights the inherent friction created when an individual is both an employee and a corporate officer. On the one hand, being a corporate officer does not permit the corporation to ignore the principle applicable to all employees, including officers and directors, that "the laborer is worthy of his hire." *Gauger v. Hintz*, 262 Wis. 333, 346, 55 N.W.2d 426, 433 (1952). On the other hand, a corporate officer is under a fiduciary duty of individual loyalty, good faith and fair dealings in conducting corporate business. *See Racine v. Weisflog*, 165 Wis. 2d 184, 190, 477 N.W.2d 326, 329 (Ct. App. 1991).

Jacobson was actively recruited by American in December 1992 to serve as its president and chief operating officer. In negotiations leading to his being hired, Jacobson made it clear that he would not be interested in the position unless his equity position amounted to something in the area of $2,000,000 within three to five years. The employment contract American offered, and which was accepted by Jacobson, granted him "2% of the common equity of the Company, or 142,000 units" subject to vesting over five years. In 1992, 2% of the equity of the company had a value between $800,000 and $900,000 and American planned to maintain 15% annual growth.

After Jacobson started his employment with American, the board of directors instructed him to review the executive compensation program, including the SAR plan. Jacobson retained an outside consulting firm and at the end of 1993, after meeting with the consultants, the board of directors initiated a new compensation program. The board also tackled the SAR

program. After meetings with the consultants, the board decided that the program should be akin to a stock option program whereby key employees would share in any appreciation of the value of the privately held stock. Jacobson was one member of an SAR committee that was directed to prepare an outline for an SAR program, and he presented his suggestions to the board's compensation committee in October 1993.[5] The board considered several drafts and directed the committee to make changes; shortly before the May 1994 meeting, the chief financial officer for American made changes to the valuation formula for SAR units. This revised plan was unanimously approved by the compensation committee and adopted by the board during its May 1994 meeting.

Jacobson was issued new SAR units under the 1994 plan, equivalent to what was promised in his employment contract, but less lucrative than the 1994B units given to key employees with more seniority than he had. In September 1994, Jacobson requested Petersen to approve a conversion of his SAR units to the more lucrative 1994B SAR units.[6] American honored Jacobson's request and issued him 1994B SAR units. After an internal audit revealed the increased value of Jacobson's 1994B SAR units, Petersen and William F. Wright, a member of the board, lobbied him to voluntarily relinquish his claim to the

---

[5] Jacobson was not a member of the board's compensation committee. Membership on that committee included Allen D. Petersen, chief executive officer, William P. Sovey and William F. Wright, Petersen's personal attorneys.

[6] Based upon calculations completed by the chief financial officer in August 1994, Jacobson's new SAR units were valued at $823,000; if converted to 1994B SAR units, the value would be $2,600,000.

more lucrative units. Jacobson refused and submitted his letter of resignation several days later.

■ Under prevailing law, the existence of a fiduciary duty does not prevent a fiduciary from dealing in transactions in which he or she has an interest adverse to the object of his or her fiduciary duty as long as, in the final analysis, the transaction can be said to be fair. *See Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983). In *Gauger*, the supreme court followed the prevailing law. The supreme court explained that "directors of a corporation occupy a fiduciary relationship to it." *Gauger,* 262 Wis. at 346, 55 N.W.2d at 433. Nevertheless, it went on to recognize that when an officer or director participates in setting his or her compensation, such transactions

> should be subject to close and searching scrutiny, but if such examination discloses that the compensation arranged for is reasonable and not based on fraud or bad faith, it would be grievous injustice, and not required by legal precedent, for the court to deny the individuals the right to receive or retain compensation reasonably and honestly earned in return for services by which the corporation and necessarily its stockholders were benefited.

*Id.*

We conclude that the transaction was fair. Jacobson did not propose a change to the SAR plan on his own. Instead, he was appointed to a committee by the board to review executive compensation. The board, after meetings with consultants, directed the development of a new SAR plan; the board reviewed proposals and returned them to the committee for changes; the chief financial officer, not Jacobson, modified the plans

to make 1994B SAR units more valuable; and, the board reviewed and approved the plan. Jacobson did not award himself the 1994B SAR units. He requested that Petersen, who as a member of the board's compensation committee was actively involved in the drafting and approval of the new SAR plan, award him the more valuable units.

As an officer, Jacobson cannot be faulted for following the directions of the board. In participating in the drafting of a new SAR plan, Jacobson was doing nothing more than fulfilling his responsibilities as the chief operating officer. As an employee, Jacobson cannot be faulted for seeking compensation commensurate with promises contained in his employment contract. The fiduciary duty of an officer cannot be used as a bludgeon to beat back increased compensation that rewards the officer for his or her management of the corporation.[7]

## ATTORNEY'S FEES

American also contends that the circuit court erred in awarding attorney's fees under § 109.03(6), STATS. Section 109.03(6) provides in part: "[I]n any [wage claim] proceeding the court may allow the prevailing party, in addition to all other costs, *a reasonable sum for expenses.*" (Emphasis added.) American argues that because this section does not specifically mention "attorney's fees," unlike another section of ch. 109, STATS.,[8] they cannot be awarded as part of "expenses."

---

[7] There is substantial and credible evidence that during Jacobson's tenure American's sales grew from $152,000,000 in 1992 to $336,000,000 when he left in 1995.

[8] One section of ch. 109, STATS., explicitly refers to attorney's fees awards. Section 109.07(4)(c), STATS., states that "[i]f the employe prevails . . . he or she shall also recover costs . . . and

American asserts that the "American rule" does not allow an attorney's fees award in this situation. We are not convinced.

In the United States, a prevailing litigant is usually not entitled to collect a reasonable attorney fee from the opposing party as a part of his or her damages or costs. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 247 (1975). This is the "American rule." This rule has previously been cited as the applicable rule in Wisconsin. *See, e.g., Cedarburg Light & Water Comm'n v. Glens Falls Ins. Co.*, 42 Wis. 2d 120, 124–25, 166 N.W.2d 165, 167 (1969). However, in *Cedarburg*, various exceptions to and modifications of this rule were recognized. *See id.* at 124–25, 166 N.W.2d at 167–68. One of these exceptions to the American rule is that it does not apply where a contractual or statutory provision authorizes the recovery of attorney's fees by the prevailing party. *See id.* at 124–25, 166 N.W.2d at 167.

Considering the general prohibition against awarding attorney's fees, we now turn to the statute in question. When construing a statute the objective is to discern the intent of the legislature. *See Green Bay Packaging, Inc. v. DILHR*, 72 Wis. 2d 26, 35, 240 N.W.2d 422, 428 (1976). A cardinal rule in interpreting statutes is to favor a construction that will fulfill the purpose of the statute over a construction that defeats the act's manifest purpose. *See Student Ass'n of Univ. of Wisconsin-Milwaukee v. Baum*, 74 Wis. 2d 283, 294–95, 246 N.W.2d 622, 627 (1976). Also, remedial statutes should be liberally construed to suppress mis-

---

. . . reasonable attorney fees" for legal actions brought against employers in a plant closing or mass layoff situation.

chief and advance the remedy intended by the statute. *See Nick v. Toyota Motor Sales, U.S.A., Inc.*, 160 Wis. 2d 373, 380–81, 466 N.W.2d 215, 218 (Ct. App. 1991), *overruled on other grounds by Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 542 N.W.2d 148 (1996).

American contends that because another provision of ch. 109, STATS., does provide for attorney's fees, then the legislature purposefully excluded them from § 109.03(6), STATS., when it only used the term "expenses." Indeed, the rule of statutory construction, *expressio unius est exclusio alterius,* presumes that the legislature intended only the exceptions it expressly includes in the statute. *See Georgina G. v. Terry M.,* 184 Wis. 2d 492, 512, 516 N.W.2d 678, 683–84 (1994). However, this rule is not absolute.

> Before the canon is deployed, the court has stated, "[t]here must be some factual evidence that the legislature intended the application of the *expressio unius* rule." For while the canon may be based upon "logic and the working of the human mind," it is not a "Procrustean standard 'to which all statutory language must be made to conform."

*Wisconsin Patients Compensation Fund v. Wisconsin Health Care Liab. Ins. Plan,* 200 Wis. 2d 599, 610, 547 N.W.2d 578, 582 (1996) (citations omitted).

The purpose of ch. 109, STATS.—the Wage Payments, Claims and Collections Act—is not difficult to understand. It concerns the right of employees to receive their wages when due. In *Pfister v. Milwaukee Economic Development Corp.*, 216 Wis. 2d 242, 268, 576 N.W.2d 554, 564 (Ct. App.), petition for review denied, 217 Wis. 2d 518, 580 N.W.2d 688 (1998), this court discussed the Act saying: "[It] flows from a simple

proposition: if workers are not paid their wages, they and their families will suffer."

In *Watkins v. LIRC*, 117 Wis. 2d 753, 765, 345 N.W.2d 482, 488 (1984), the supreme court held that attorney's fees may be awarded even though the Wisconsin Fair Employment Act lacked specific statutory language allowing it. The court reasoned that to award attorney's fees "is necessary in order to fully enforce and give meaning to the rights created by the Act." *Id.*

> The legislature could not have intended the Act to be a meaningless, empty gesture. However, a right without the means to enforce it is meaningless. If rights are to be meaningful, they must be enforceable. To enforce the rights guaranteed under the Act, assistance of counsel is fundamental.

*Id.* Relying principally on the *Watkins* analysis, the federal district court in *Jackman v. WMAC Investment Corp.*, 610 F. Supp. 290 (E.D. Wis. 1985), *aff'd,* 809 F.2d 377 (7th Cir. 1987), has interpreted § 109.03(6), STATS., to allow attorney's fees awards. We find its discussion persuasive.

Similar to the appellant in *Watkins*, if Jacobson is not awarded the attorney's fees he incurred, he will be in a significantly worse economic situation than when he began his lawsuit. *Cf. Watkins*, 117 Wis. 2d at 764, 345 N.W.2d at 487. The purpose of ch. 109, STATS., is to ensure that employees receive their full wages. If Jacobson is not entitled to his attorney's fees, then he will be forced to pay this amount out of the wages awarded by the court. This will not make Jacobson whole. Jacobson should not be financially penalized in his efforts to receive wages due him. This would contradict the purpose of the legislatively-created remedy.

In summary, we conclude that there is substantial credible evidence to support the circuit court's findings that American granted Jacobson 1994B SAR units; his resignation preceded the attempt to terminate him; and, as a result, he is entitled to the value of his 1994B SAR units. Although the court did not expressly resolve the question of whether Jacobson breached the fiduciary duty he owed American, we conclude that there is credible evidence that Jacobson's actions were fair and reasonable and were not a breach of his fiduciary duty. Finally, it is appropriate to award attorney's fees under ch. 109, STATS., to make Jacobson whole. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.