COURT OF APPEALS
DECISION
DATED AND FILED

November 10, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP168**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CV3255

**IN COURT OF APPEALS
DISTRICT IV**

JOSEPH KOUTNIK AND ANDREA VONCKX,

   PLAINTIFFS-RESPONDENTS,

 V.

MARTINDALE PINNACLE CONSTRUCTION, LLC,

   DEFENDANT-APPELLANT.

        APPEAL from a judgment of the circuit court for Dane County: VALERIE BAILEY-RIHN, Judge. *Affirmed and cause remanded*.

        Before Blanchard, P.J., Graham, and Nashold, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Martindale Pinnacle Construction, LLC ("MPC") appeals a judgment entered following a trial in which the jury found MPC liable to two former employees, Joseph Koutnik and Andrea Vonckx, for unpaid wages. MPC argues that it is entitled to a new trial based on a series of purported trial errors, and it further argues that the circuit court erred in awarding attorney fees to Koutnik and Vonckx pursuant to WIS. STAT. § 109.03(6) (2019-20).[1]

¶2      We conclude that the circuit court properly exercised its discretion in denying MPC's motion for a new trial, and we decline to exercise our discretionary power of reversal.  The purported errors MPC preserved for appeal were either not errors at all, or they did not affect MPC's substantial rights.  We also conclude that the circuit court properly exercised its discretion in awarding statutory attorney fees.  Therefore, we affirm the judgment, and we remand the matter to the circuit court for an award of Koutnik and Vonckx's reasonable attorney fees for this appeal.

## BACKGROUND

¶3      MPC is a roofing and exterior construction contractor company and is wholly owned by Paul Martindale.

¶4      In early 2018, MPC hired Joseph Koutnik and Andrea Vonckx (collectively the "plaintiffs") as sales representatives.  At the time of their hiring, the plaintiffs signed contracts classifying them as independent contractors.  The

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version.  As discussed in greater detail below, WIS. STAT. § 109.03(6) allows for an award of attorney fees to a prevailing plaintiff in a wage claim case brought under § 109.03.  *Jacobson v. American Tool Cos.*, 222 Wis. 2d 384, 398-402, 588 N.W.2d 67 (Ct. App. 1998).

contracts also included compensation provisions that were handwritten by Martindale, and which the circuit court later determined were ambiguous.

¶5     The plaintiffs both worked for MPC until early September 2018. During their period of employment, Martindale was in and out of jail, and he asked the plaintiffs to take on additional responsibilities and to effectively manage MPC in his stead.  At some point, the relationship between Martindale and the plaintiffs broke down.  MPC failed to pay its roofing contractors, who stopped performing work, and MPC lost business as a result.  Martindale grew frustrated as he struggled to keep up with MPC's business dealings and to communicate with the plaintiffs.  By the end of August, he ceased all direct communication with the plaintiffs.

¶6     Martindale was finally released from jail in late August or early September.  A few days after his release, Martindale fired the plaintiffs.  At that time, MPC had paid Koutnik a total of $11,500 and Vonckx a total of $6,500. Upon terminating their employment, Martindale refused to pay the plaintiffs the remaining amounts owed to them by MPC for a number of purported reasons. Martindale claimed, among other things, that MPC had no obligation to pay the plaintiffs for work they had performed because their employment had been terminated; that MPC lost customers due to the plaintiffs' defective work; that the plaintiffs had committed misconduct; and that MPC did not need to pay them both because they were in a romantic relationship and could be paid as a team. Martindale later acknowledged that, at the time he refused to pay the plaintiffs, he had not done any accounting to determine what they were owed, nor had he reconciled the payments that the plaintiffs had already received against the terms of their contracts.  Martindale acknowledged that he did not know whether MPC

had paid the plaintiffs more than, less than, or the correct amount of compensation they were entitled to under the terms of their contracts with MPC.

¶7      The plaintiffs then commenced this action to recover unpaid wages and commissions. Their complaint alleged that they were either independent contractors or employees, and it claimed, among other things, breach of contract based on MPC's failure to pay commissions and a statutory wage claim under WIS. STAT. ch. 109. MPC counterclaimed for breach of contract, tortious interference with contract, civil conspiracy, and conversion.

¶8      Following discovery, the plaintiffs moved for summary judgment on their breach of contract and statutory wage claims, and for an order dismissing MPC's counterclaims. The circuit court granted the motion in part and denied it in part. It dismissed Martindale's counterclaims for tortious interference with contract and civil conspiracy. However, it concluded that genuine issues of material fact precluded summary judgment on the plaintiffs' breach of contract and statutory wage claims. It concluded that the compensation terms of the contracts were ambiguous and, as such, it could not determine as a matter of law whether MPC had breached the contracts or how much the plaintiffs were owed. The court also concluded that genuine issues of material fact precluded granting summary judgment in favor of the plaintiffs on their statutory wage claim because their ability to recover under WIS. STAT. ch. 109 depended on whether they were employees, independent contractors, or managers, or whether they were hired in a commissioned sales capacity.

¶9      Pretrial, MPC filed several motions in limine. One of the motions sought to prevent the jury from learning that Martindale had been incarcerated, and another sought to prevent the jury from learning of a lawsuit between

Martindale and his brothers ("the sibling lawsuit"). The circuit court granted these motions at the pretrial hearing. We describe the court's orders in greater detail in the discussion section below.

¶10 The case then proceeded to a four-day jury trial. During the trial, MPC objected to the introduction of various exhibits and testimony, some of which it argued violated the circuit court's orders in limine. At the end of the trial, the jury returned a verdict in favor of both plaintiffs on their statutory wage claims. The jury found that the plaintiffs were employees, and that MPC owed them unpaid wages in the form of unpaid commissions. The verdict awarded Koutnik $75,444 and Vonckx $65,593.

¶11 Post-verdict, the plaintiffs filed a motion seeking the imposition of statutory penalties, statutory prejudgment interest, costs, and attorney fees pursuant to WIS. STAT. § 109.03(6). MPC filed a motion for judgment notwithstanding the verdict, a renewed motion for a directed verdict, and a motion for a new trial pursuant to WIS. STAT. § 805.15.

¶12 The circuit court held a hearing, at which it denied all of MPC's post-verdict motions, including its motion for a new trial. The circuit court denied the plaintiffs' motion for statutory penalties and prejudgment interest, but it granted their motion for costs and attorney fees. Ultimately, the circuit court awarded the plaintiffs $70,000 in attorney fees, to be split evenly between them.

## DISCUSSION

¶13 On appeal, MPC argues it is entitled to a new trial based on several errors it alleges occurred during the trial. It also contends that the circuit court

5

erroneously exercised its discretion by awarding attorney fees to the plaintiffs under WIS. STAT. § 109.03(6). We address these issues in turn.

## I. Arguments for a New Trial

¶14     To begin, MPC argues that it is entitled to a new trial because of multiple purported errors that occurred during the trial. MPC does not explicitly challenge the circuit court's denial of its motion for a new trial under WIS. STAT. § 805.15. It instead asks us to exercise our discretionary powers of reversal under WIS. STAT. § 752.35 and remand the case for a new trial on the grounds that the real controversy has not been fully tried. However, our supreme court has cautioned that § 752.35 "should be used only in *exceptional* cases," and only "'after all other claims," such as evidentiary errors, "have been weighed and determined to be unsuccessful.'" *State v. McKellips*, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258 (quoted source omitted). Accordingly, we begin by reviewing the circuit court's denial of MPC's motion for a new trial under § 805.15 and, after concluding that no errors occurred that warrant a new trial under § 805.15, we briefly explain why this is not an exceptional case warranting discretionary reversal under § 752.35.

¶15     WISCONSIN STAT. § 805.15(1) governs motions for a new trial, and it provides that "[a] party may move … for a new trial because of errors in the trial, … or because of excessive or inadequate damages, … or in the interest of justice." However, to warrant a new trial, an error must have affected the party's substantial rights:

> No … new trial [shall be] granted in an action or proceeding on the ground of … the improper admission of evidence … unless in the opinion of the court to which the application is made, after an examination of the entire proceeding, it shall appear that the error complained of has

> affected the substantial rights of the party seeking to …
> secure a new trial.

WIS. STAT. § 805.18(2). Under our precedents, an error "'affect[s] the substantial rights of a party'" if there is "a reasonable possibility that the error contributed to the outcome of the action." *Nommensen v. American Cont'l Ins. Co.*, 2001 WI 112, ¶52, 246 Wis. 2d 132, 629 N.W.2d 301 (quoted source omitted). "A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.'" *Id.* (quoted source omitted). If the error at issue is not sufficient to undermine confidence in the outcome, the error is harmless. *See id.*

¶16    "This court approaches a request for new trial with great caution." *Morden v. Continental AG*, 2000 WI 51, ¶87, 235 Wis. 2d 325, 611 N.W.2d 659. Where, as here, the circuit court has denied a party's motion for a new trial, we recognize that "'a circuit court is in a better position than an appellate court to determine whether confidence in the correctness of the outcome at the original trial or hearing has been undermined.'" *Id.* (quoted source omitted).

¶17    A circuit court's decision to grant or deny a motion for a new trial is discretionary, and will only be reversed if the court erroneously exercised its discretion. *See Krowlikowski v. Chicago & Nw. Transp. Co.*, 89 Wis. 2d 573, 580, 278 N.W.2d 865 (1979). A circuit court properly exercises its discretion when it examines the relevant facts, applies the correct standard of law, and uses a rational process to reach a reasonable conclusion. *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737. "Although the proper exercise of discretion contemplates that the circuit court [will] explain its reasoning, when the court does not do so, we may search the record to determine if it supports the court's discretionary decision." *Id.*

¶18    MPC contends that a new trial is warranted for the following reasons:  the plaintiffs' attorney violated the circuit court's order in limine prohibiting any reference to the fact that Martindale had been incarcerated; she also violated the order in limine prohibiting the introduction of evidence related to the sibling lawsuit; the court erroneously admitted a prejudicial photograph of Martindale; and the plaintiffs' attorney made improper statements in her closing argument.  We address each of these alleged errors in turn.

### A.  Martindale's Incarceration

¶19    We begin with MPC's argument that the plaintiffs' attorney violated the circuit court's order precluding any party or witness from mentioning Martindale's incarceration.  As noted above, MPC filed a pretrial motion in limine to preclude any mention of Martindale's incarceration on the grounds that it was irrelevant under WIS. STAT. § 904.01, that its probative value was substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03, and that it was other-acts evidence that was inadmissible under WIS. STAT. § 904.02(2)(a).  The plaintiffs opposed the motion, arguing that Martindale's incarceration was a significant fact in the case.  They argued that it was relevant to explaining why their employment duties had increased so that they, and not Martindale, were effectively managing MPC.  They also argued that Martindale's incarceration was relevant to rebutting MPC's claim that they caused MPC to lose business and its claim that Martindale fired them because they would not answer his calls.

¶20    The circuit court granted MPC's motion.  In so doing, it acknowledged that Martindale's unavailability, which was due to his incarceration, was directly relevant to several aspects of the plaintiffs' claims.  However, because the court also concluded that the evidence was unfairly

prejudicial, it struck a compromise. Pursuant to the compromise, the parties, their attorneys, and their witnesses would refer to Martindale as having been "unavailable" during the plaintiffs' employment. MPC's attorney did not object to this compromise at the pretrial hearing, and, indeed, he agreed that the phrase was appropriate.[2] The circuit court also agreed to give an instruction at the beginning of trial informing the jury that Martindale's reasons for being unavailable were not relevant to the case and should not be considered.

¶21    During the entirety of the four-day trial, no attorney, party, or witness ever directly mentioned Martindale's incarceration. Instead, the plaintiffs did precisely what the circuit court had instructed and referred to Martindale as having been "unavailable." However, in its post-verdict motion for a new trial and now again on appeal, MPC argues that the plaintiffs indirectly violated the circuit court's order in several ways.

¶22    To begin, MPC contends that the plaintiffs' references to Martindale being unavailable were repeated, occurring approximately 130 times during the trial. MPC argues that the repeated use of this phrase was prejudicial, and part of a deliberate plan to cause the jury to speculate as to the cause of Martindale's unavailability.

¶23    We disagree. For one, as the plaintiffs point out in their response brief, MPC never objected to the circuit court's decision at the pretrial conference permitting the parties to refer to Martindale as having been unavailable, nor did

---

[2] Specifically, MPC's attorney stated: "Your instincts were exactly right. I can't say it any better than you said it initially. There's some potential relevance, but the important factor, crucial factor, as counsel says, for this case is that he is unavailable."

MPC object to the plaintiffs' use of the term "unavailable" during the trial. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues not preserved at the circuit court … generally will not be considered on appeal."). MPC has not filed a reply brief, and it carries the burden of showing that it preserved this issue for appellate review. *Id.* We therefore take its lack of a response as a concession. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (arguments not refuted are deemed conceded).

¶24 But were we to address this argument on the merits, the use of the term "unavailable," even if repeated, plainly does not constitute a violation of the circuit court's order in limine. As the plaintiffs point out, the circuit court recognized that Martindale's unavailability was directly relevant to several of their claims and defenses, and the plaintiffs did precisely what the circuit court instructed them to do when addressing those topics.

¶25 MPC also argues that Vonckx's testimony indirectly violated the circuit court's order in limine on two occasions, causing unfair prejudice. The first such occasion occurred in response to a question about what Martindale had asked Vonckx to do; Vonckx testified that Martindale asked her to "[h]elp him out, call people, do what needs to be done, basically, while he's in a tough spot." On appeal, MPC argues that Vonckx's testimony about Martindale being in a "tough spot" violated the order in limine, but MPC did not object to the question or Vonckx's response at trial. The plaintiffs argue that MPC did not preserve its objection to this testimony, and MPC has not responded to this argument, thereby conceding that it has forfeited its objection to this testimony. *See id.*

¶26 The second such occasion occurred in response to a question about whether Vonckx was able to communicate with Martindale during his period of unavailability; Vonckx responded, "Yes, at night for his allotted amount of time, via collect phone call." MPC objected this time and moved for a mistrial. The circuit court sustained the objection, but denied MPC's motion for a mistrial. In a discussion outside the presence of the jury, the court acknowledged that the line of questioning was relevant, and suggested that, if asked, the plaintiffs should state that they did not have a phone number for Martindale. The court then informed the jury that "collect calls could be [made for] a number of reasons."

¶27 MPC contends that Vonckx's testimony about collect calls indirectly violated the circuit court's order in limine, and that it was unfairly prejudicial. It asserts that the jury would have inferred that Martindale was incarcerated because only prisoners make collect calls and are given an allotted amount of time to speak on the phone. According to MPC, this inference would have made a significant difference in the jury's view of Martindale, and undermines confidence in the outcome of the trial.

¶28 We disagree. In addition to concluding that Vonckx's testimony about collect calls did not violate the court's order, we further conclude that it did not substantially affect MPC's rights. Generally speaking, we assume that "'a properly given curative instruction is followed' and that 'the jury acted according to the law.'" *Seifert v. Balink*, 2017 WI 2, ¶139, 372 Wis. 2d 525, 888 N.W.2d 816 (quotes source omitted). Where, as here, the instruction is tailored to the facts of the particular case, we presume that it cured any prejudice. *State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158. MPC does not address the circuit court's instruction, and it supplies no argument for abandoning our presumption that the instruction cured any prejudice. Additionally, in denying

MPC's motion for a new trial, the circuit court determined that Vonckx's testimony did not "sufficiently taint[] the trial." The circuit court is in the best place to make this determination, and we see no reason to question it. *Morden*, 235 Wis. 2d 325, ¶87.

## B. The Sibling Lawsuit

¶29 We turn to MPC's argument about the plaintiffs' attorney's improper questioning about the sibling lawsuit. MPC contends that the circuit court erred in permitting the plaintiffs' attorney to use the lawsuit for impeachment purposes, and that it erred in not granting it a new trial on that basis.

¶30 By way of background, in 2018, Martindale filed a lawsuit against his brothers, making various claims related to their employment with MPC. Martindale's brothers responded with counterclaims for breach of contract, quantum meruit, unjust enrichment, and theft by contractor. As noted above, MPC filed a motion in limine in this case which sought to prevent the jury from learning about the sibling lawsuit. According to the motion, it would be unfairly prejudicial for the jury to learn about the underlying allegations supporting Martindale's brother's counterclaims, which were "similar" to the plaintiffs' claims in this case. The circuit court determined that the sibling lawsuit was irrelevant and granted the motion. The plaintiffs argued that the sibling lawsuit might be relevant for impeachment purposes, and the court determined that the plaintiffs would be allowed to impeach Martindale with any testimony he provided in the sibling lawsuit, so long as it did not get into the subject matter of that lawsuit.

¶31 At trial, MPC's attorney questioned Martindale about his certifications in the contracting industry. Martindale testified that he held a

"Master Elite" accreditation with a shingle manufacturer, and that to hold such an accreditation, he had to have "no lawsuits." He stated that he had informed the manufacturer about the plaintiffs' lawsuit against MPC, such that "they know what's going on."

¶32 On cross-examination, the plaintiffs' attorney sought to impeach Martindale's credibility by showing that he had not been honest about prior lawsuits. MPC objected, but the circuit court permitted the questioning because Martindale had opened the door. The plaintiffs' attorney repeated her question, and Martindale responded that the current lawsuit was "the only lawsuit that had been brought against him." Outside the presence of the jury, the plaintiffs' attorney asked the court whether she could impeach that testimony by asking Martindale about the sibling lawsuit, and the court ruled that she could, but that she should not get into the subject matter of that case. MPC objected on the grounds that it would be prejudicial to say the siblings' names, and that it would be contrary to the circuit court's order in limine. The court allowed the questioning, explaining: "The trouble is [Martindale] likes to lie on the stand. [The plaintiffs' attorney is] tired of it. I think you are probably tired of it. I'm tired of it."

¶33 The plaintiffs' attorney then asked Martindale whether claims were brought against him in the sibling lawsuit. Martindale responded that they were not, and that it had been MPC that "initiated the case." MPC renewed its objection. At a sidebar conference, the circuit court reversed its prior ruling to permit questioning on the topic for impeachment purposes, explaining that Martindale had testified accurately when he said no other lawsuits were brought against him, as the siblings had asserted counterclaims. The court then instructed the jurors "to disregard any mention of" the sibling lawsuit. It informed the jury

that MPC had brought the lawsuit and counterclaims were asserted, "but we're going to move along."[3]

¶34    MPC argues that this questioning violated the circuit court's order in limine, that it damaged its case because the jury learned that Martindale had been involved in a lawsuit against his brothers, and that it is entitled to a new trial on that basis. We disagree.

¶35    As an initial matter, we agree with the plaintiffs that Martindale's testimony—that there had been no prior lawsuits brought against him—was potentially misleading, even if technically accurate. But, in any event, we are not persuaded that the discussion of the sibling lawsuit substantially affected MPC's rights for at least two reasons.

¶36    First, the circuit court sustained MPC's objection, instructed the jury that Martindale has testified consistently, and instructed the jury to disregard the sibling lawsuit. As noted above, we presume a jury follows instructions given by the court and that a tailored curative instruction cures any prejudice. *Dorsey*, 379 Wis. 2d 386, ¶55. MPC does not develop any arguments to overcome this presumption.

¶37    Second, even if the jury disregarded the circuit court's curative instruction, we are not persuaded that the discussion of the lawsuit could have

---

[3] In its briefing, MPC asserts that the circuit court "did not give the jury a curative instruction, but informed the jury it would be moving along from Plaintiffs' line of questioning." However, the circuit court did in fact instruct the jury that Martindale had testified consistently that no other claims had been brought against him or his company, and that it should disregard any mention of the lawsuit. We caution counsel to ensure the accuracy of their representations to the court regarding the record.

changed the entire outcome of the trial. The unfair prejudice MPC identified in its motion in limine and motion for a new trial was that the siblings' counterclaims were substantially similar to the claims made by the plaintiffs in this case. Yet, as the plaintiffs point out, the jury was never provided any information about the nature of the siblings' counterclaims, and MPC does not explain how mention of the mere existence of the lawsuit was in itself unfairly prejudicial. In denying MPC's motion for a new trial on this basis, the circuit court determined that it did not "taint[] this whole case in light of all the testimony by [Martindale]." The circuit court is in the best place to make this determination, and we see no reason to question it. *Morden*, 235 Wis. 2d 325, ¶87.

### C. Disparaging Photograph

¶38 We turn to MPC's argument that the circuit court erroneously admitted a "disparaging" photograph of Martindale dressed in a tank top, sunglasses, and bandana, with visibly tattooed arms. MPC argues that the photograph was irrelevant and unfairly prejudicial.

¶39 By way of background, the photograph in question is a screenshot taken from a promotional video titled "Paul Martindale CEO and Founder" that was available on MPC's website. The photograph was introduced by the plaintiffs during Koutnik's testimony. Koutnik was asked about customers' reactions to Martindale, what Martindale wore at job sites, and whether Martindale had ever worn the apparel that he was wearing in the photograph at job sites. MPC objected to the photograph as irrelevant, and the circuit court overruled MPC's objection. The plaintiffs then published the photograph to the jury, and Koutnik was asked, "How did customers react to [Martindale] showing up to contract signings dressed like this?" MPC objected to the form of the question. The circuit

court revisited its relevancy determination, sustained the objection, and instructed the plaintiffs' attorney to "move on."

¶40 In its motion for a new trial, MPC argued that the photograph should not have been admitted. At the post-verdict hearing on its motion for a new trial, it argued that the photograph was part of a scheme by the plaintiffs' attorney to disparage Martindale. The circuit court rejected MPC's argument, reasoning that "Mr. Martindale was not the most credible witness. I think if there was any prejudice, it was from his own testimony."

¶41 On appeal, MPC argues that this photograph was irrelevant, prejudicial, and disparaging and that, "when combined with the other efforts that Plaintiffs made to bring improper evidence about [Martindale] to the jury's attention," it was used to turn the jury against Martindale.

¶42 We review a circuit court's evidentiary rulings for an erroneous exercise of discretion. *Grube v. Daun*, 213 Wis. 2d 533, 542, 570 N.W.2d 851 (1997). A "'circuit court's decision to admit or exclude evidence is entitled to great deference.'" *Dorsey*, 379 Wis. 2d 386, ¶37 (quoted source omitted). "We will uphold a circuit court's evidentiary ruling if it 'examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach.'" *Id.* (quoted source omitted). If the circuit court applied the proper law to the pertinent facts and provided a reasonable basis for its ruling, we will conclude that the circuit court acted within its discretion. *Id.*

¶43 We conclude that the circuit court did not erroneously exercise its discretion when it admitted the photograph and then limited its use. For one, the photograph was somewhat relevant to the plaintiffs' claims and defenses for the

reasons identified by the plaintiffs—to demonstrate how Martindale presented himself to customers in order to rebut Martindale's claim that it was the plaintiffs' actions that caused MPC to lose business.

¶44     Even if the photograph was irrelevant, as the circuit court apparently determined, MPC does not clearly articulate how a screenshot from a video that MPC used for promotional purposes could cause unfair prejudice. *See* WIS. STAT. § 904.03. Unfair prejudice is a "prejudice that results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, or arouses its sense of horror, provokes its instinct to punish, or otherwise causes a jury to base its decision on something other than the established propositions in the case." **State v. Sullivan**, 216 Wis. 2d 768, 789-90, 576 N.W.2d 30 (1998). We are not persuaded that Martindale's appearance or attire would have provoked such a reaction.

¶45     Nor does MPC explain how the photograph's admission substantially affected its rights and tainted the entirety of the trial. Indeed, MPC appears to acknowledge that the photograph alone does not warrant reversal or a new trial. Instead, it contends that we must consider the cumulative prejudicial effect of the photograph along with all of the other errors it identifies in this appeal. However, we have not found any of the other errors identified by MPC to be unfairly prejudicial, and accordingly, there is nothing for us to cumulate. *See* **Mentek v. State**, 71 Wis. 2d 799, 809, 238 N.W.2d (1976) (lumping several inadequate bases together does not create successful grounds for a new trial, as "zero plus zero equals zero"). We therefore conclude the circuit court did not erroneously exercise its discretion in denying MPC's motion for a new trial on this basis.

### D. Closing Argument

¶46    The final trial error identified by MPC relates to the closing argument by the plaintiffs' attorney. MPC contends that, during her argument, the plaintiffs' attorney improperly informed the jury that the circuit court had found MPC's contracts with the plaintiffs to be ambiguous. MPC contends that "[d]irectly telling the jury that the judge favors the Plaintiffs' side of the dispute was an unjustifiable breach of jury trial protocol."

¶47    Before explaining why this argument is unavailing, we provide the following background as context. As noted above, the plaintiffs moved for summary judgment on their breach of contract claims, but the circuit court denied the motion, in part because it determined that the compensation provisions in the contracts were ambiguous. Following the presentation of evidence at trial, the court instructed the jury on how to interpret the meaning of "ambiguous language" in the contracts.[4] Then, at the outset of her closing arguments, the plaintiffs'

---

[4] Specifically, the court instructed the jury as follows:

> Contracts, ambiguous language. The parties dispute the meaning of the language in their contracts regarding the plaintiffs' commissions and salary. It is your duty to interpret the contract to give effect to what the parties intended when they made their agreement.
>
> In determining the meaning of the language, you should consider the following: The words in dispute; the purpose of the contract; the circumstances surrounding the making of the contract; the subsequent conduct of the parties; and other language in the contract. If you're unable to determine the intention of the parties after considering these factors, then you should interpret the disputed language against the parties who prepared the contract.

*See* Wis JI—Civil 3051.

18

attorney stated as follows: "Now, as you saw, the contracts that were prepared by Martindale are not models of clarity. The [circuit court] has already ruled that portions of those contracts are ambiguous. And it's going to be up to you, the jurors--" MPC objected at that point and, at a sidebar conference, argued that it had been "improper" for the attorney to "comment on pretrial rulings" and that the comment "must be struck." The court struck the comment and provided the jury with the following curative instruction: "I'm going to strike that last statement. Even though it's not evidence, … the question of whether the contract is ambiguous is up to the jury to decide, not the Court."

¶48 MPC argues that it is entitled to a new trial because the jury could have inferred from the attorney's statement about ambiguity that the judge favored the plaintiffs' case. The plaintiffs argue, among other things, that MPC has forfeited this argument by failing to contemporaneously move for a mistrial.

¶49 Generally speaking, a failure to move for a mistrial on the basis of the objected-to statement constitutes a forfeiture of the issue. *See State v. Davidson*, 2000 WI 91, ¶86, 236 Wis. 2d 537, 613 N.W.2d 606; *State v. Bell*, 2018 WI 28, ¶11, 380 Wis. 2d 616, 909 N.W.2d 750. MPC has not filed a reply brief on appeal explaining why we should overlook the forfeiture, and we could take the point as conceded. *Charolais Breeding Ranches, Ltd.*, 90 Wis. 2d at 109.

¶50 But even on the merits, MPC's argument is unavailing. In denying MPC's motion for a new trial, the circuit court determined that the attorney's statement did not substantially affect MPC's rights. As the court explained: "[T]he fact that the contract was ambiguous cuts both ways." Indeed, during briefing on the plaintiffs' motion for summary judgment, it was MPC that had successfully argued that the compensation provisions in the contracts were

ambiguous and the proper interpretation of the contract language should be determined by a jury. MPC has not explained how the attorney's statement about ambiguity would have led the jury to infer that the judge favored the plaintiffs' case.

¶51 Finally, the attorney's comment was limited in scope, and the circuit court provided the jury with a curative instruction. As we have explained, it is presumed that a properly given curative instruction tailored to the facts of the case cures any resulting prejudice. *Dorsey*, 379 Wis. 2d 386, ¶55. MPC develops no argument to overcome that presumption here.

## E. Cumulative Prejudicial Effect

¶52 Having concluded that none of the purported errors warrant a new trial on their own, we turn to MPC's argument that they created a cumulative prejudicial effect warranting a new trial. In support of this argument, MPC points to the difference between the amount of unpaid wages that the plaintiffs requested and the amount the jury actually awarded.[5] MPC reasons that the jury's decision to award the plaintiffs less than they requested suggests that the jury "obviously did not accept [the plaintiffs'] outlandish claims." From this, MPC reasons that "the cumulative effect of the attack on [Martindale] personally, combined with the improper trial conduct of Plaintiffs' counsel likely impacted the result in this case."

---

[5] Specifically, Vonckx asked for $217,495.18 in unpaid commissions and wages, and the jury awarded her $65,593. Koutnik asked for $93,088.71 in unpaid commissions and wages, and the jury awarded him $75,544.

¶53    MPC's argument is highly speculative, and we reject it on that basis. MPC cites no legal authority to support the proposition that a jury award that is lower than the amount a plaintiff requested reflects prejudice towards the defendant. If anything, a lower-than-requested verdict amount tends to suggest the absence of prejudice.

¶54    In any event, MPC's argument is foreclosed by our conclusion that all of the purported errors identified by MPC were either not errors at all, or if error, that they were not unfairly prejudicial. *See Mentek*, 71 Wis. 2d at 809 ("zero plus zero equals zero"). For all these reasons, we conclude that the circuit court did not erroneously exercise its discretion when it denied MPC's motion for a new trial under WIS. STAT. § 805.15.[6]

### F.  Discretionary Reversal

¶55    Finally, we briefly address the argument that we should grant a new trial in the interests of justice under WIS. STAT. § 752.35. Under that statute, we may reverse a judgment "regardless of whether the proper motion or objection appears in the record" if "it appears from the record that the real controversy has not been fully tried" or if it "is probable that justice has for any reason been miscarried." *See* § 752.35; *see also Morden*, 235 Wis. 2d 325, ¶88.

---

[6] In its appellate briefing, MPC also argues that the plaintiffs volunteered additional derogatory information about Martindale and MPC in an effort to "attack [Martindale's] character." However, MPC did not object at trial to several of the exchanges it now complains about on appeal, and the circuit court struck from the record the exchanges that MPC did object to. Additionally, MPC has forfeited any argument about the additional derogatory information by failing to raise it in its motion for a new trial. But even if MPC had raised this argument in its motion for a new trial, we are confident that, consistent with the arguments MPC did preserve, the circuit court would have determined that this testimony did not affect MPC's substantial rights and that Martindale's own testimony was the cause of any prejudice.

¶56    Reversals under WIS. STAT. § 752.35 in the interests of justice are rare and are reserved for exceptional cases. *State v. Kucharski*, 2015 WI 64, ¶5, 363 Wis. 2d 658, 866 N.W.2d 697. This is not an exceptional case. Because we are persuaded that the controversy has been adequately tried and there has been no miscarriage of justice, we decline to reverse under § 752.35.

## II.  Attorney Fee Award

¶57    We now turn to MPC's argument that the circuit court erroneously exercised its discretion by awarding statutory attorney fees under WIS. STAT. § 109.03(6). That statute provides for an award of attorney fees to a prevailing plaintiff in a wage claim case like this.[7] *Jacobson v. American Tool Cos.*, 222 Wis. 2d 384, 398-402, 588 N.W.2d 67 (Ct. App. 1998).

¶58    Whether to award attorney fees and the amount awarded are both discretionary decisions entrusted to the circuit court. *Beaduette v. Eau Claire Cnty. Sheriff's Dep't*, 2003 WI App 153, ¶31, 265 Wis. 2d 744, 668 N.W.2d 133. A reasonable exercise of discretion requires that the court use "'a logical rationale based on the appropriate legal principles and facts of record.'" *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶22, 275 Wis. 2d 1, 683 N.W. 2d 58 (quoted source omitted). "In exercising this discretion in the context of a fee-shifting statute, the circuit court must use the 'lodestar' approach." *Johnson v. Roma II-Waterford LLC*, 2013 WI App 38, ¶17, 346 Wis. 2d 612, 829 N.W.2d 538.

---

[7] WISCONSIN STAT. § 109.03(6) provides:  "In an action by an employee or the department against the employer on a wage claim, no security for payment of costs is required. In any such proceeding the court may allow the prevailing party, in addition to all other costs, *a reasonable sum for expenses*."  (Emphasis added.)  Courts have interpreted the phrase "reasonable expenses" to include attorney fees. *Jacobson*, 222 Wis. 2d at 398-402.

"Under the lodestar approach, the starting point is the number of hours reasonably expended, multiplied by a reasonable hourly rate, with upward or downward adjustments then made after taking other relevant factors into account." *Id.*

¶59   As noted above, the plaintiffs filed a post-verdict motion seeking attorney fees, along with an affidavit attaching itemized billing records.  Those records showed that their attorneys worked approximately 725 hours on the case over a three year period, and that, had their attorneys continued to bill at an hourly rate of $275, the plaintiffs would have incurred over $178,000 in legal fees for the litigation.[8]

¶60   At the hearing on the post-verdict motions, the circuit determined that the plaintiffs should "not [be] forced to sacrifice recovered wages to pay their lawyer," and that they were entitled to recover reasonable attorney fees under WIS. STAT. § 109.03(6).  However, the court also determined that a reduction in both the number of hours reasonably expended and the rate reasonably charged were warranted because, among other things, the case was over litigated; not all hours were billed by attorneys; some tasks were duplicitous; and the results obtained were less than the plaintiffs originally asked for.  The court determined that the attorneys would have reasonably expended 400 hours on the litigation, and that a blended rate of $200 was reasonable.  Ultimately, it awarded the plaintiffs a combined total of $70,000 in attorney fees.

---

[8] It appears that the plaintiffs originally agreed to pay their attorneys at a rate of $275 per hour, and then, during the course of the litigation, they agreed to switch to a contingency fee agreement.

¶61     On appeal, MPC concedes that the circuit court applied the correct legal standard.   However, MPC argues that the circuit court should not have awarded any attorney fees at all based on other factors unique to this particular case.  We address and reject MPC's several arguments to this end.

¶62     MPC first argues the circuit court should have refused to award fees because of what MPC characterizes as the plaintiffs' attorneys' "unreasonable trial practice" and "behavior."  However, the only "improper" behavior MPC points to is counsel's remark in her closing argument, discussed above, that the contracts at issue were ambiguous.  This error had little if any bearing on the total amount of fees incurred in the case, and we have already concluded that it did not prejudice MPC's substantial rights.  MPC fails to explain how a single harmless error should result in a prevailing plaintiff being denied attorney fees under a fee-shifting statute.  *See **Jacobson***, 222 Wis. 2d at 401 (suggesting that the purpose of the attorney fees provision in WIS. STAT. § 109.03(6) is to make a successful wage claimant whole).

¶63     Next, MPC argues that the plaintiffs are not entitled to fees because they did not adjudicate their claims through the dispute resolution process administered by the state department of workforce development (DWD).  By way of background, wage claimants are given the option to adjudicate their claims in court or through DWD's dispute resolution process, and if they choose to adjudicate their claims with DWD, they are eligible to recover additional statutory penalties.  *See* WIS. STAT. § 109.11(2)(b).  MPC speculates that the plaintiffs bypassed the DWD dispute resolution process because they "desired protracted litigation" and "knew that, as an expert agency, DWD would not accept [their] exaggerated [compensation] claims."  MPC cites to ***Hubbard v. Messer***, 2003 WI 145, ¶27, 267 Wis. 2d 92, 673 N.W.2d 676, to support its argument that the

difference in penalties under § 109.11(2)(b) evinces a "legislative intent to encourage employees to use the DWD process." It contends that, given this legislative preference for the DWD process, the plaintiffs should be penalized for bypassing it.

¶64 We reject these arguments. Neither WIS. STAT. ch. 109 nor our precedents require wage claimants to adjudicate their claims through the DWD's dispute resolution process. Nor do they suggest that prevailing claimants who chose to adjudicate claims in court should be denied attorney fees as a result of that choice. On the contrary, our cases point in the opposite direction. *See Jacobson*, 222 Wis. 2d 384 (determining that attorney fees were appropriate for wage claimant who pursued their claim exclusively in court, without any consideration of the fact that they bypassed DWD's dispute resolution process). And the circuit court already accounted for MPC's concerns that the plaintiffs drove up their fees by engaging in protracted litigation when it reduced the fees claimed by the plaintiffs to an amount it determined to be reasonable.

¶65 Finally, MPC argues that the plaintiffs are not entitled to attorney fees because the jury's damages award was "over-generous." MPC reasons that the plaintiffs should be required to pay their attorney fees as a percentage of their damages award and that, after subtracting their attorney fees, the plaintiffs would still be left with a reasonable hourly rate for the work they performed for MPC.

¶66 We reject this argument for reasons too numerous to detail here. Most fundamentally, MPC is essentially asking us to assume the role of the jury and to reweigh the evidence regarding the plaintiffs' work experience, duration of employment, hours of work, and reasonable compensation. The jury has already

25

determined the amount of the unpaid wages owed to the plaintiffs, and MPC does not directly challenge the reasonableness of the award.

¶67     For all these reasons, we conclude that the circuit court did not erroneously exercise its discretion by awarding attorney fees under WIS. STAT. § 109.03(6).

¶68     As a final matter, we address the plaintiffs' request for the attorney fees that they reasonably incurred on appeal.  A plaintiff who recovers attorney fees at the circuit court level is generally entitled to recover reasonable attorney fees incurred for a successful defense of the award on appeal.  ***Benkoski v. Flood***, 2001 WI App 84, ¶38, 242 Wis. 2d 652, 626 N.W.2d 851 (citing ***Shands v. Castrovinci***, 115 Wis. 2d 352, 359, 340 N.W.2d 506 (1983)).  We conclude that the plaintiffs are entitled to their reasonable attorney fees pertaining to this appeal, and we remand this case to the circuit court to determine the amount of the award.

## CONCLUSION

¶69     For all of these reasons, we affirm the circuit court's judgment, and we remand to the circuit court to determine the reasonable fees to be awarded to Koutnik and Vonckx for this appeal.

*By the Court.*—Judgment affirmed and cause remanded.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.